UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| OUR LADY'S INN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17-CV-01543-AGF |
| | ) | |
| CITY OF ST. LOUIS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion for summary judgment filed by

Plaintiffs Our Lady's Inn, the Archdiocesan Elementary Schools of St. Louis, O'Brien

Industrial Holdings, LLC, and Frank O'Brien, Jr. (ECF No. 13), and the cross motion for

summary judgment filed Defendant City of St. Louis (ECF No. 20).   The matter has been

extensively briefed and is ready for disposition.   For the reasons set forth below,

Plaintiffs' motion will be granted in part and denied in part, and the City of St. Louis'

motion will be granted in part and denied in part.

## BACKGROUND

For the purposes of the motions before the Court, the facts as established by

the record are as follows.   On February 10, 2017, the City of St. Louis Board of

Alderman approved St. Louis Ordinance No. 70459 ("Ordinance"), which prohibits

discrimination based on a person's reproductive health decisions[1] or pregnancy.

---

[1]      "Reproductive health decision" means "any decision related to the use or intended

ECF No. 20-5.   Specifically, Plaintiffs challenge provisions contained in Section

Two, subsections B and C of the Ordinance:[2]

**SECTION TWO.**   Prohibited Discriminatory Practices.

(A)   Discriminatory practices, as defined and established by this section, are prohibited. Any person engaging in a prohibited discriminatory practice shall be guilty of an ordinance violation, which shall be punishable in the manner set out in this ordinance.

(B)   DISCRIMINATION IN EMPLOYMENT.   It shall be a prohibited discriminatory practice:

(1)   For an employer to fail or refuse to hire, to discharge or otherwise to discriminate against any individuals with respect to compensation or the terms, conditions or privileges of employment, because of their reproductive health decisions or pregnancy status (including childbirth or a related medical condition). However, nothing in this ordinance shall require a religious institution, corporation, association, or society to provide reproductive health benefits of any kind;

(2)   For an employer to take any adverse employment action against an employee based on a reproductive health decision by an employee or employee's dependent. However, nothing in this ordinance shall require a religious institution, corporation, association, or society to provide reproductive health benefits of any kind;

(3)   For a labor organization to exclude or expel from membership, or otherwise to discriminate against any applicants or members, because of their reproductive

---

use of a particular drug, device, or medical service related to reproductive health, including the use or intended use of contraception or fertility control or the planned or intended initiation or termination of pregnancy."   ECF No. 20-5, Sec. 1(14).

2      The provisions of Section 2(B) will be generally be referred to as "the Employment Provisions."   The provisions of Section 2(C) will be generally referred to as "the Housing Provisions."

2

health decisions or pregnancy status (including childbirth or a related medical condition);

(4) For an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against any individuals because of their reproductive health decisions or pregnancy status (including childbirth or a related medical condition);

(5) For an employer, labor organization or employment agency to print or circulate or cause to be printed or circulated, any statement advertisement or publication, or to make any inquiry in connection with prospective employment, which expresses directly or indirectly any preference, limitation, specification or discrimination because of reproductive health decisions or pregnancy status (including childbirth or a related medical condition), unless based upon a bona fide occupational qualification.

\* \* \*

(C) DISCRIMINATION IN PROVISION OF HOUSING OR REALTY.

(1) Prohibited Discriminatory Housing or Realty Practice. It shall be a prohibited housing or realty practice and shall constitute a discriminatory housing practice:

(a) For any person, including, without limitation any real estate broker, salesman or agent, or any employee thereof, to discriminate against any individuals because of their reproductive health decisions or pregnancy status (including childbirth or a related medical condition), with respect to the use, enjoyment or transfer, or prospective use, enjoyment, or transfer, of any interest whatsoever in realty, or with respect to the terms, conditions, privileges or services granted or rendered in connection therewith, or with respect to the making or purchasing of loans for the purchase or maintenance of residential real estate or loans in the secondary market, or the

provision of other financial assistance, or with respect to the terms, conditions, privileges or services granted or rendered in connection with any interest whatsoever in realty, or with respect to the making of loans secured by residential real estate;

(b)     For any person, including, without limitation, any banking, money lending, credit securing or other financial institution, or any officer, agent or employee thereof, to discriminate against any individuals because of their reproductive health decisions or pregnancy status (including childbirth or a related medical condition), with respect to the granting or withholding of credit or financial assistance, or the extending or renewing of credit or financial assistance, or modifying of rates, terms, conditions, privileges or other provisions of credit or financial assistance, or services retained or rendered, in connection with the transfer or prospective transfer of any interest whatsoever in realty, or in connection with the construction, repair, improvement or rehabilitation of realty;

(c)     For any real estate broker, salesman or agent, or any employee thereof, or any other person seeking financial gain thereby, directly or indirectly to induce or solicit, or attempt to induce or solicit, the transfer of any interest whatsoever in realty, by making or distributing, or causing to be made or distributed, any statement or representation concerning the entry or prospective entry into the neighborhood of a person or persons of person based on said person's reproductive health decision or pregnancy status (including childbirth or related medical condition);

(d)     For any person to refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate the sale or rental of, or otherwise make unavailable or deny a dwelling to any persons because of their reproductive health decisions or pregnancy status (including childbirth or a related medical condition);

(e)    For any person to discriminate against any other person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of that person's reproductive health decisions or pregnancy status (including childbirth or a related medical condition);

(f)    For any person to make, print, or publish, or cause to be made, printed or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on reproductive health decisions or pregnancy status (including childbirth or a related medical condition) or an intention to make any such preference, limitation or discrimination;

(g)    For any person to represent to another person because of reproductive health decisions or pregnancy status (including childbirth or a related medical condition) that any dwelling is not available for inspection, sale, or rental when such dwelling is, in fact, so available;

(h)    For any person to deny any other person access to or membership or participation in any multiple-listing service, real estate brokers' organization or other service, organization or facility relating to the business of selling or renting dwellings, or to discriminate against him in the terms or conditions of such access, membership, or participation on account of reproductive health decisions or pregnancy status (including childbirth or a related medical condition).

(ECF No. 20-5).   The Ordinance also includes a provision stating the following:

Nothing in this ordinance shall prohibit a religious institution, corporation, association, society, health care facility or educational institution with historic religious affiliation from:

i.    Prohibiting the provision of any reproductive health service on property owned or leased by it;

ii.  Refusing to provide or pay for any reproductive health service to any patient, student or employee; or

iii.  Refusing to provide health insurance coverage to any employee for any reproductive health service.

Sec. 2(B)(6); Sec. 2(C)(1)(j).  Lastly, the Ordinance contains an enforcement provision as follows:

> **SECTION THREE**.  Complaints, Proceedings and Enforcement.  An aggrieved person may, not later than one hundred eighty (180) days after an alleged prohibited discriminatory practice has occurred or terminated, file a complaint with the Director of the Civil Rights Enforcement Agency pursuant to the procedures set forth in Ordinance 67119.  Such complaints shall be taken, investigated, processed and enforced according to the terms and provisions of Ordinance 67119.

*Id.*

Plaintiff Our Lady's Inn is a Missouri nonprofit corporation that provides housing for pregnant, low-income women seeking an alternative to abortion.  Plaintiffs' Statement of Facts ("PSOF") at ¶ 1.  Our Lady's Inn also operates a four-family flat that provides transitional housing for women who have completed their stay in a residential shelter and are either working, attending school, or enrolled in a job-training program.  *Id.* at ¶ 2.  It leases living space to women who are employees of Our Lady's Inn and serve as supervisors of residents.  *Id.* at ¶ 3.  One criterion for employment with Our Lady's Inn is that the applicant support the pro-life mission of the organization; if an applicant does not support that mission, Our Lady's Inn does not consider the applicant to be a good candidate for employment.  *Id.* at ¶ 10.  Our Lady's Inn actively engages in expressive activities aimed at raising awareness of its pro-life mission and does not provide its employees with

health insurance having coverage for abortion due to its sincerely held religious beliefs. *Id.* at ¶¶ 8, 14.

The Archdiocesan Elementary Schools of the Archdiocese of St. Louis ("Archdiocesan Elementary Schools") are a Missouri nonprofit corporation consisting of a group of elementary schools administered by the Catholic Education Center and governed by the Archdiocesan Board of Catholic Education. *Id.* at ¶ 15. The employees of the Archdiocesan Elementary Schools must, upon application for employment, sign a Witness Statement attesting that they respect ecclesial authority, will not take a public position contrary to the Catholic Church, and will conduct their lives in a manner consistent with the teachings of the Catholic Church. *Id.* at ¶ 21. This requirement is imposed by the Archdiocese of St. Louis on all Catholic school employees throughout the Archdiocese. *Id.* The Witness Statement specifically enumerates and requires signers to abide by, among other doctrines, the Catholic Church's longstanding and widely known opposition to abortion. *Id.* Every new and renewed employee is required to sign the Witness Statement as a condition of employment. *Id.*

Plaintiff O'Brien Industrial Holdings, LLC ("O'Brien Industrial Holdings") is a closely-held company engaged in exploration, mining, and processing of refractory and ceramic raw materials, and Plaintiff Frank O'Brien is the principal owner and holds the sole voting interest in the company. *Id.* at ¶¶ 27, 28. Mr. O'Brien holds to the teachings of the Catholic Church regarding the sanctity of human life from conception to natural death, and he adheres to the Catholic Church's teachings regarding the immorality of

sterilization and artificial means of contraception. *Id.* at ¶ 36. Mr. O'Brien asserts that

his company's provision of employee health insurance coverage for contraception,

sterilization, or abortion would violate his sincere religious beliefs. *Id.* at ¶ 36. In his

Affidavit, Mr. O'Brien stated that since the enactment of the Ordinance, he has felt anxious

and deterred from openly operating his company as he always had—in accordance with his

sincerely held religious beliefs. *Id.* at ¶ 37. He is also uncertain how to communicate

information about O'Brien Industrial Holdings' mission and values to prospective

employees without incurring legal penalties. *Id.* at ¶ 38.

   Plaintiffs brought this lawsuit seeking injunctive and declaratory relief against the

City of St. Louis to remedy what they allege to be numerous violations of Plaintiffs'

freedom of speech, freedom of association, and other rights secured by the United States

Constitution and Missouri law. Specifically, Plaintiffs allege the following against the

City: (1) violation of the free speech clause of the First Amendment; (2) violation of the

right to expressive association under the First Amendment; (3) violation of the religion

clauses of the First Amendment (*Hosanna-Tabor* claim) (Archdiocesan Elementary

Schools only); (4) violation of the Due Process Clause of the Fourteenth Amendment

(*Pierce* claim) (Archdiocesan Elementary Schools only); (5) violation of the Due Process

Clause of the Fourteenth Amendment – void for vagueness; (6) violation of the Equal

Protection Clause of the Fourteenth Amendment (Mr. O'Brien and O'Brien Industrial

Holdings only); (7) violation of Missouri law (Mo. Rev. Stat. §§ 191.724 and 376.805)

causing the Ordinance to be null and void (Our Lady's Inn, Mr. O'Brien, and O'Brien

Industrial Holdings only); (8) violation of Missouri law (Mo. Rev. Stat. §§ 188.325 and 135.600) causing the Ordinance to be null and void (Our Lady's Inn only); (9) defective enforcement provisions; and (10) violation of the Missouri Religious Freedom Restoration Act.

Plaintiffs challenge the Employment and Housing Provisions as applied to them because they violate Plaintiffs' First Amendment freedoms, Missouri law, and Supreme Court precedent. The O'Brien Plaintiffs specifically challenge various provisions of the Ordinance, as applied, that they argue require non-religious employers to provide employee health benefits covering contraceptives, abortions, and sterilizations.

Plaintiffs also seek a Court order declaring the Employment and Housing Provisions, as well as the enforcement provision, of the Ordinance to be facially unconstitutional, unlawful, invalid, unenforceable, null and void and otherwise of no force and effect. Plaintiffs request that the City of St. Louis be enjoined from enforcing the Ordinance against them, "as well as others not before the Court where it is facially unlawful." ECF No. 1 at 43. Plaintiffs further request that any remaining provisions of the Ordinance be declared invalid because they cannot be severed, and award Plaintiffs costs, reasonable attorney's fees, and expert fees and expenses pursuant to 42 U.S.C. § 1988.

## ARGUMENTS OF THE PARTIES

All Plaintiffs assert that the Ordinance is facially invalid as an overbroad restriction on their First Amendment rights to free speech and expressive association. Plaintiffs also bring a void-for-vagueness facial challenge.

The O'Brien Plaintiffs argue that the Ordinance is also invalid as applied to the extent that it requires employers to provide employee health insurance benefits that cover abortions, contraceptives, and sterilizations. This, the O'Brien Plaintiffs argue, conflicts with their sincerely-held religious beliefs and violates Missouri's Religious Freedom Restoration Act, which prohibits government interference with a person's free exercise of religion unless that interference is essential to further a compelling interest and is not unduly restrictive. The O'Brien Plaintiffs also claim that the Ordinance's religious exemptions concerning employee health coverage violates the Equal Protection Clause of the Fourteenth Amendment because the Ordinance treats religious and non-religious entities dissimilarly.

Our Lady's Inn and the Archdiocesan Elementary Schools argue that the Ordinance, as applied, violates their right to free speech under the First Amendment because it regulates speech based on content and viewpoint, does not serve a compelling interest, and is not narrowly tailored. These Plaintiffs also claim the Ordinance violates their right to freedom of association because the forced inclusion of individuals who do not share Plaintiffs' beliefs on abortion affects in a significant way Plaintiffs' ability to advocate public or private viewpoints.

The Archdiocesan Elementary Schools argue that the Ordinance violates their constitutionally-protected right to hire and fire "ministers" (which includes teachers) without government interference by way of employment discrimination laws, under *Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, 565 U.S. 171 (2012). The Archdiocesan Elementary Schools also argue that the Ordinance conflicts with their right to conduct the internal affairs of their schools, as well as the rights of parents to choose where their children will receive religious and pro-life instruction, in violation of the Supreme Court's decision in *Pierce v. Society of Sisters*, 268 U.S. 510 (1925).

All Plaintiffs maintain that the Ordinance violates Missouri law prohibiting mandatory employee coverage of abortion, contraception, or sterilization (Mo. Rev. Stat. §§ 191.724, 376.805). Our Lady's Inn argues that the Ordinance may require it to violate the Missouri Alternatives to Abortion Services Program, Mo. Rev. Stat. § 188.325, which provides services or counseling to pregnant women, resulting in a loss of tax credits. Lastly, all Plaintiffs challenge the enforcement provisions of the Ordinance on the basis that they unlawfully incorporate by reference the enforcement provisions contained in a different City Ordinance.

The City in its opposition and cross motion for summary judgment argues that a plain reading of the Ordinance demonstrates that it is not unconstitutionally vague or overbroad. The City claims that the Ordinance contains specific provisions that exempt both religious and non-religious entities from being required to provide healthcare coverage "for reproductive rights." Any other interpretation, the City maintains, would

11

violate *Burwell v. Hobby Lobby*, 134 S. Ct. 2751 (2014), which the City took into account when drafting the Ordinance. Thus, the City argues, the claims of the O'Brien Plaintiffs must fail. Further, the City maintains that the Ordinance is compliant with the Missouri Religious Freedom Restoration Act because its provisions are essential to further a compelling government interest and are not unduly restrictive.

The City also argues that the Ordinance is a content-neutral regulation protecting an important government interest (individuals making reproductive health decisions), and that it narrowly limits the time, place, and manner in which a person can discriminate against reproductive health decisions. With regard to the expressive association claims, the City argues that the prohibition against discrimination on the basis of reproductive health choices does not interfere with Plaintiffs' expressive association rights.

The City contends that the Archdiocesan Elementary Schools' claims are without merit because the cases cited do not apply. Specifically, the City maintains that teachers are not "ministers" under *Hosanna-Tabor*; and that the *Pierce* holding, which established black letter law regarding a parent's right to direct the upbringing and education of one's child, does not apply to the hiring and firing of teachers.

Lastly, the City claims the Ordinance does not violate any Missouri law. It maintains that the Ordinance has no effect on Our Lady's Inn as it relates to the funding it receives under the Missouri Alternatives to Abortion Services Program because the Ordinance does not require Our Lady's Inn to run afoul of the statute. As to the challenges regarding employee healthcare coverage, the City reiterates is position that the Ordinance

does not require employers to provide coverage for abortions, contraceptives, and sterilization.

## STANDARD OF REVIEW

The standard for summary judgment is well settled.   In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party.   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Littrell v. City of Kansas City, Mo.*, 459 F.3d 918, 921 (8th Cir. 2006).   The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists.   Fed. R. Civ. P. 56(e); *Littrell*, 459 F.3d at 921.   "To survive a motion for summary judgment, the nonmoving party must 'substantiate his allegations with sufficient probative evidence that would permit a finding in [its] favor based on more than mere speculation, conjecture, or fantasy.'"   *Putman v. Unity Health Sys.*, 348 F.3d 732, 733 (8th Cir. 2003) (internal citation omitted).   "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."   *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005).   Viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving

party the benefit of all reasonable inferences, if there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law. *Samuels v. Kansas City Mo. Sch. Dist.*, 437 F.3d 797, 801 (8th Cir. 2006).

**DISCUSSION**

**Requirement to Provide Reproductive Health Benefits**

   Plaintiffs challenge the Ordinance on multiple grounds to the extent its prohibition against discrimination would require the provision of reproductive health benefits. These arguments turn on an interpretation of the language of the Ordinance, the meaning of which the parties fundamentally dispute. As such, the Court will first address this threshold issue of interpretation.

   When interpreting city ordinances, the Court reads them for their plain and ordinary meaning in the context used. *DRB No. 24, LLC v. City of Minneapolis*, 774 F.3d 1185, 1188 (8th Cir. 2014); *State ex rel. Teefey v. Bd. of Zoning Adjustment of Kansas City*, 24 S.W.3d 681, 684 (Mo. 2000). The O'Brien Plaintiffs argue that the Ordinance requires them to provide their employees with health insurance coverage that includes contraception, abortion, and sterilization that, for religious reasons, Mr. O'Brien opposes.[3] The City asserts that the Ordinance does not require the O'Brien Plaintiffs to provide coverage for reproductive services and points to the following language: "nothing in this

---

[3]   Our Lady's Inn and the Archdiocesan Elementary Schools do not appear to argue that the Ordinance requires them to provide reproductive health benefits, apparently conceding that they fall within the Ordinance exemptions. To the extent Our Lady's Inn does challenge this aspect of the Ordinance, however, the analysis with respect to the O'Brien Plaintiffs would apply to Our Lady's Inn as well.

ordinance shall require a religious institution, corporation, association, or society to provide reproductive health benefits of any kind" and "[n]othing in this ordinance shall prohibit a religious institution, corporation, association, society, health care facility or educational institution with historic religious affiliation from . . . [r]efusing to provide health insurance coverage to any employee for any reproductive health service."   Sec. 2(B)(1)-(2); Sec. 2(B)(6); Sec. 2(C)(1)(j).   The City argues that the word "religious" applies only to the word "institution."   The O'Brien Plaintiffs, on the other hand, argue that "religious" modifies each item in the subsequent list, and thus the O'Brien Plaintiffs do not qualify for the exemption.

The Court cannot agree with the City's interpretation.   Rather, the Court finds that when the phrase "religious institution, corporation, association, society, health care facility or educational institution with historic religious affiliation" is given its ordinary or natural meaning within the context of the Ordinance, the adjective "religious" applies to each noun in the series.   Under the City's approach, the world "religious" is essentially rendered superfluous.   Moreover, the City's interpretation leads to illogical results. Section 2(C)(1)(j) of the Ordinance would, for instance, exempt educational institutions with historic religious affiliation, but not other educational institutions.   If the City had intended to exempt all employers from any requirements related to health insurance benefits, it could have drafted the exemption more directly to exclude any employer, individual, or organization.[4]

_____

[4]       As Plaintiffs point out, the Ordinance is modeled after a law passed in Washington,

Moreover, the O'Brien Plaintiffs' reading of the world "religious" as modifying each noun in a list is in line with the "series-qualifier canon," which "requires a modifier to apply to all items in a series when such an application would represent a natural construction." *U.S. v. Loyd*, 886 F.3d 686, 688 (8th Cir. 2018). "[T]he series qualifier canon generally applies when a modifier precedes or follows a list." *Wong v. Minnesota Dep't of Human Servs.*, 820 F.3d 922, 928–29 (8th Cir. 2016) (citing *Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348 (1920); *In re Estate of Pawlik*, 845 N.W.2d 249, 252 (Minn. Ct. App. 2014) (noting that a prepositive or postpositive modifier of a series may apply to all of the items in that series) (citing Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012)); *see also Flores-Figueroa v. U.S.*, 556 U.S. 646, 650 (2009) (holding that the adverb "knowingly" modified verbs in a series). Interpreting the exemptions following the series-qualifier canon is in line with a plain reading of the Ordinance. Thus, the Court cannot accept the City's conclusion that "religious" qualifies only to "institutions."

This interpretation, then, renders the Ordinance unlawful as applied to the O'Brien Plaintiffs under Missouri law. The Missouri Religious Freedom Restoration Act, Mo. Rev. Stat. § 1.302 ("Missouri RFRA"), provides that:

1.   A governmental authority may not restrict a person's free exercise of religion, unless:

(1) The restriction is in the form of a rule of general applicability, and does not discriminate against religion, or among religions; and

---

D.C., which states: "This section shall not be construed to require an employer to provide insurance coverage related to a reproductive health decision." D.C. Code § 2-1401.05.

(2) The governmental authority demonstrates that application of the restriction to the person is essential to further a compelling governmental interest, and is not unduly restrictive considering the relevant circumstances.

Mo. Rev. Stat. § 1.302.1. "Exercise of religion" is defined as "an act or refusal to act that is substantially motivated by religious belief, whether or not the religious exercise is compulsory or central to a larger system of religious belief." Mo. Rev. Stat. § 1.302.2.

Here, the Ordinance fails to exempt employers like the O'Brien Plaintiffs from providing health care benefits covering abortion, contraception, or sterilization, in direct violation of the Missouri RFRA. *Cf. Hobby Lobby*, 134 S. Ct. 2751 (invalidating rules mandating contraceptive coverage as applied to the plaintiff because they violated the parallel federal Religious Freedom Restoration Act). The City has failed to meet its burden to prove that the Ordinance is essential to further a compelling governmental interest and is not unduly restrictive. Accordingly, the Ordinance as applied to the O'Brien Plaintiffs is unlawful, and the Court will grant in part their motion for summary judgment on this ground.

**First Amendment Challenges (Counts I and II)**

Plaintiffs bring both facial and as applied challenges to the Ordinance under the First Amendment. "[T]he distinction between facial and as applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings or disposition in every case involving a constitutional challenge." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). The important inquiry is whether the claim

and the relief that would follow is beyond the particular circumstances of the plaintiffs. *Doe v. Reed*, 561 U.S. 186, 194 (2010).

Whereas a facial challenge applies to an entire legislative enactment or provision, "[a]n as-applied challenge consists of a challenge to the statute's application only as-applied to the party before the court." *Minn. Majority v. Mansky*, 708 F.3d 1051, 1059 (8th Cir. 2013) (internal quotation marks omitted). "If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable." *Id*. (internal quotation marks omitted). The Supreme Court has recognized that facial challenges are disfavored and should be used sparingly. *Washington State Grange v. Washington State Rep. Party*, 552 U.S. 442, 450 (2008); *Ayotte v. Planned Parenthood of No. New England*, 546 U.S. 320, 330-31 (2006). As such, the Court will first consider the validity of a statute as applied before reaching the facial overbreadth question. *Bd. of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 484-85 (1989); *Jacobsen v. Howard*, 109 F.3d 1268, 1275 (8th Cir. 1997) ("the district court should have first considered the validity of the statutes as applied instead of reaching the overbreadth question in the first instance").

### A.   Constitutionality As Applied

Our Lady's Inn and the Archdiocesan Elementary Schools ask the Court to declare the Employment Provisions of the Ordinance to be invalid as applied to them, and to declare the Housing Provisions to be invalid as applied to Our Lady's Inn, on First Amendment grounds. Although the O'Brien Plaintiffs also contend they are asserting

First Amendment challenges, the O'Brien Plaintiffs have pointed to no actions in which they engage that are impacted by the Ordinance, other than the decision not to provide reproductive health care benefits. Certainly nothing in the company goals (ECF No. 16-4, at 35) nor in the fostering of charitable endeavors is at odds with the Ordinance. This Court, however, has already held the Ordinance invalid as applied to the O'Brien Plaintiffs with respect to any requirement to provide reproductive health benefits. As such, the Ordinance will be analyzed on First Amendment grounds only as to Our Lady's Inn and the Archdiocesan Elementary Schools.

### 1. First Amendment – Free Speech Clause Challenge (Count I)

Our Lady's Inn and the Archdiocesan Elementary Schools first argue that certain provisions of the Ordinance fail because they are content-based regulations, and that they also regulate speech based on viewpoint. "A law that is content-based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2228 (2015) (citing *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)).

"Government discrimination among viewpoints—or the regulation of speech based on 'the specific motivating ideology or the opinion or perspective of the speaker'—is a 'more blatant' and 'egregious form of content discrimination.'" *Id.* (citing *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). Further, "it is well established that the First Amendment's hostility to content-based regulation extends not

only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic." *Id*. (internal citations, quotations, and alterations omitted). In *Reed*, the Supreme Court explained, as an example, that a law banning the use of sound trucks for political speech—and only political speech—would be a content-based regulation, even if it imposed no limits on the political viewpoints that could be expressed. *Id.*

In *United States v. O'Brien*, the Supreme Court held that "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." 391 U.S. 367, 376 (1968). But laws that regulate conduct that is, in part, effectuated through language (or some other medium of exercising expression) are generally considered regulations of conduct that do not pose a First Amendment issue at all. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 389 (1992) ("[W]ords can in some circumstances violate laws directed not against speech but against conduct . . . .").

"[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Giboney v. Empire Storage & Ice Co*., 336 U.S. 490, 502 (1949); *see also, e.g., Rumsfeld v. Forum for Acad. & Institutional Rights*, 547 U.S. 47, 62 (2006) ("The fact that [a law barring racial discrimination in hiring] will require an employer to take down a sign reading 'White Applicants Only' hardly means that the law should be analyzed as one

regulating the employer's speech rather than conduct.").   As the Supreme Court

recognized, most recently in *Masterpiece Cakeshop, Ltd. V. Colo. Civil Rights Comm'n*,

138 S. Ct. 1719 (2018), regulations of conduct "generally do not abridge the freedom of

speech, even if they impose incidental burdens on expression."   *Masterpiece Cakeshop*,

138 S. Ct. at 1741 (citing *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011).   In short,

"First Amendment protection [extends] only to conduct that is inherently expressive."

*Rumsfeld*, 547 U.S. at 66 (holding that the Solomon Amendment's military access to

universities requirement did not regulate conduct by universities that was inherently

expressive).

Here, the Ordinance restricts conduct, namely, discrimination in housing and

employment on the basis of reproductive health decisions.   Plaintiffs maintain that the

Ordinance prevents Plaintiffs from engaging in speech to make decisions in employment,

housing, and realty, or inquiries thereof, consistent with their institutional missions and

sincere moral and religious beliefs about human life.   The facts of this case, however, are

not in line with *Hurley v. Irish-American Gay, Lesbian & Bisexual Grp. of Boston, Inc.*,

515 U.S. 557, 572-73 (1995), in which the public accommodation law "ha[d] the effect of

declaring . . . speech itself to be the public accommodation," by requiring a particular group

to be included in a parade—which are deemed a form of expression.   To the extent that the

Ordinance restricts speech, it does so only incidentally to regulating conduct and therefore

does not implicate the First Amendment.

Moreover, the prevention of discrimination on the basis of reproductive health decisions is a "substantial government interest that would be achieved less effectively absent the regulation." *See Rumsfeld*, 547 U.S. at 67 (holding that "[m]ilitary recruiting promotes the substantial Government interest in raising and supporting the Armed Forces—an objective that would be achieved less effectively if the military were forced to recruit on less favorable terms than other employers"). Accordingly, under these facts, Plaintiffs' First Amendment challenge based on the violation of the free speech clause as applied to Plaintiffs fails.

**2. First Amendment – Expressive Association Challenge (Count II)**

Our Lady's Inn and the Archdiocesan Elementary Schools next argue that the Ordinance as applied to them violates their freedom of expressive association by compelling Plaintiffs to employ or house individuals who advocate for or perform abortions. ECF No. 15 at 58. "[I]mplicit in the right to engage in activities protected by the First Amendment is a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984). Government actions that unconstitutionally burden that right may take many forms, one of which is intruding into a group's internal affairs by forcing it to accept a member it does not desire. *Id.* at 622-23. Specifically, "[t]he forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints." *Boy Scouts of Am. v. Dale*,

530 U.S. 640, 647 (2000) (citing *N.Y. State Club Assn., Inc. v. City of New York*, 487 U.S. 1, 13 (1988)).

But the freedom of expressive association, like many freedoms, is not absolute. *Roberts*, 468 U.S. at 623.   The freedom of expressive association can be overridden "by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Id.*

In *Boy Scouts of America v. Dale*, the Boy Scouts revoked the membership of an "adult scout" who was openly gay, and the scout sued under New Jersey's Law Against Discrimination ("LAD"), which prohibits discrimination based on sexual orientation in places of public accommodation.   530 U.S. at 645.   The Boy Scouts argued that the LAD violated its First Amendment right to associate for expressive purposes.   *Id*. at 643. Applying a three-step analysis, the Supreme Court held that the First Amendment protected the Boy Scouts' right to control its membership.   First, it determined that the Boy Scouts was an expressive association because its purpose was to "instill values in young people."   *Id*. at 649–50.   Next, the Court evaluated "whether the forced inclusion of [the expelled scout] would significantly affect the Boy Scouts' ability to advocate public or private viewpoints."   *Id*. at 650.   It determined that the Boy Scouts' official position was that homosexuality was immoral and that requiring the Boy Scouts to admit the expelled scout would "interfere with the Boy Scout's choice not to propound a point of view contrary to its beliefs."   *Id*. at 655–56.   Finally, the Court analyzed whether the

LAD was narrowly tailored to a compelling interest. *Id*. at 656–57. Although the Supreme Court noted that eliminating discrimination can be a compelling state interest, it concluded that the "state interests embodied in New Jersey's public accommodations law do not justify such a severe intrusion on the Boy Scout's freedom of expressive association." *Id*. at 654.

Applying the principles of *Dale*, the Court finds that Our Lady's Inn is an expressive association entitled to protection under the free-exercise clause. The mission of Our Lady's Inn is to encourage and assist homeless women to forgo abortion, and it calls itself a "life-affirming alternative to abortion." PSOF ¶ 20. Our Lady's Inn communicates that mission to its residents, but also provides support to pregnant women who chose not to have an abortion and engages in a variety of other activities aimed at raising awareness of "the dignity of life." PSOF ¶ 8. "The expansive notions of expressive association used in *Roberts* and *Dale* demonstrate that there is no requirement that an organization be primarily political (or even primarily expressive) in order to receive constitutional protection for expressive associational activity." *See Pi Lambda Phi Fraternity v. Univ. of Pittsburgh*, 229 F.3d 435, 443 (3d Cir. 2000). Here, Our Lady's Inn squarely fits the description of an expressive association.

Applying the second *Dale* factor, the forced inclusion of individuals who do not share Our Lady's Inn's commitment against abortion would significantly affect the ability of Our Lady's Inn to advocate for its services and encourage women to forgo abortion. Our Lady's Inn ability to organize its staff and circulate expressive materials with their

views on controversial reproductive rights issues would be hindered if they were required to employ dissenters from their pro-life message.

Like the Boy Scouts in *Dale*, the Archdiocesan Elementary Schools are also an expressive association because they are engaged in instilling Catholic, pro-life values in young people. Specifically, the Archdiocesan Elementary Schools engage in the instruction of the young, which is an expressive activity. *Runyon v. McCrary*, 427 U.S. 160 (1976) (holding that a civil rights statute did not violate the school's constitutionally-protected rights of free association and privacy or parents' right to direct the education of their children); *Roberts*, 468 U.S. at 636 ("[P]rotected expression may also take the form of quiet persuasion, inculcation of traditional values, instruction of the young, and community service.").

Turning to the second *Dale* factor, it is undisputed that the Archdiocesan Elementary Schools impose upon their teachers a code of religious moral conduct and expect them to follow, in their personal life and behavior, the recognized moral precepts of the Catholic Church. Under these circumstances, the forced inclusion of teachers or other staff who do not adhere to those values would significantly affect the Archdiocesan Elementary Schools' ability to advocate their viewpoints, through its teachers and staff, to their students.

Turning to the last *Dale* factor, restrictions of expressive association have been subjected to close scrutiny; "such restrictions are permitted only if they serve 'compelling state interests' that are 'unrelated to the suppression of ideas'—interests that cannot be

advanced 'through . . . significantly less restrictive [means].'" *Christian Legal Soc.*

*Chapter of the Univ. of California, Hastings Coll. of the Law v. Martinez*, 561 U.S. 661,

680 (2010) (alternations in original) (quoting *Roberts v. United States Jaycees*, 468 U.S.

609, 623 (1984).   The burden of proof is on the City.

Here, the City offered two government interests in support of the Ordinance: (1) to

prohibit discrimination against historically disadvantaged groups, such as a person making

reproductive health decisions; and (2) to ensure its citizens have access to employment and

housing despite their decision to have a family or terminate a pregnancy.   The sole piece

of evidence presented by the City is the Affidavit of Alderwoman Megan Green, who

stated that she "was approached by City residents who were concerned that their job

security and housing situation was threatened by employers and landlords who

discriminated against their reproductive health choices."   ECF No. 20-1 at ¶ 2.

Although the City certainly has a compelling interest to protect its citizens against

discrimination – clearly a laudable goal – it has failed to present sufficient evidence that

those making reproductive health decisions are "historically disadvantaged" or that the

provisions of the Ordinance limiting speech were narrowly tailored to further that

compelling interest.   In fact, the City only presents the Affidavit of the sponsor of the

Ordinance, who states in general terms that she was approached by residents concerned

about discrimination on the basis of reproductive health decisions.   This is insufficient to

withstand strict scrutiny.   Thus, the Employment Provisions of the Ordinance are invalid

as applied to Our Lady's Inn and the Archdiocesan Elementary Schools, and the Housing

Provisions are invalid as applied to Our Lady's Inn, and the Court will grant summary judgment on Count II to this extent.

In light of this holding, it is unnecessary for the Court to address, under Plaintiff's Count III, whether the Ordinance could be applied to non-ministerial employees or to define who would be properly defined as a ministerial employee, as discussed in *Hosanna Tabor Evangelical Lutheran Church and School v. E.E.O.C. See, e.g*., *Collette v. Archdiocese of Chicago*, 200 F. Supp. 3d 730, 733 (N.D. Ill. 2016) (holding that the applicability of the ministerial exception is a question of law for the Court and is factual and case-specific). But, of course, a narrowly-tailored anti-discrimination provision still might have application to the Archdiocese if, for example, if it were to apply its policies, such as the Witness Statement, to its employees unevenly. *See Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000) ("if the school's purported 'discrimination' is based on a policy of preventing nonmarital sexual activity which emanates from the religious and moral precepts of the school, and if that policy is applied equally to its male and female employees, then the school has not discriminated based on pregnancy in violation of Title VII"); *cf. Hosanna Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171, 196 (2012) (holding, on grounds rooted in the Religious Clauses, that the ministerial exception bars employment discrimination claims brought by ministerial employees, but expressing "no view of whether the [ministerial] exception bars other types of suits, including actions by employees").

**B.    Facial Challenge**

Plaintiffs further contend that the Ordinance is facially overbroad, and they seek a

Court order declaring the Employment Provisions and the Housing Provisions, as well as

the enforcement provisions, of the Ordinance to be facially unconstitutional, unlawful,

invalid, unenforceable, null and void and otherwise of no force and effect.   *See* Section

2(A); (B)(1) (first sentence), (2) (first sentence), (3), (4), and (5); (C)(1)(a) though (h); and

Section 3.   What is more, they argue that the unconstitutional provisions are not severable,

such that the entire Ordinance must be invalidated.

"A facial challenge to a legislative act is . . . the most difficult challenge to mount

successfully.   *United States v. Salerno*, 481 U.S. 739, 745 (1987).   To succeed,

challengers must establish "that no set of circumstances exist under which the legislative

act would be valid, or that the statute lacks any plainly legitimate sweep."   *Phelps Roper v.*

*City of Manchester, Mo.*, 697 F.3d 678, 685 (8th Cir. 2012) (internal citations and

quotations omitted).   A statute "may also be invalidated on a facial First Amendment

challenge as overbroad if a substantial number of its applications are unconstitutional,

judged in relation to its plainly legitimate sweep."   *Id.* (quotation marks omitted).

"Ordinarily, a party may not facially challenge a law on the ground that it would

be unconstitutional if applied to someone else."   *SOB, Inc. v. Cty. of Benton*, 317 F.3d 856,

864 (8th Cir. 2003).   The First Amendment overbreadth doctrine, however, provides an

avenue "whereby a law may be invalidated as overbroad if 'a substantial number of its

applications are unconstitutional, judged in relation to the statute's plainly legitimate

sweep.'"   *United States v. Stevens*, 559 U.S. 460, 473 (2010) (*quoting Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008)).

A court must first resolve a challenge to a statute as applied before proceeding to an overbreadth issue.   *Bd. of Trustees v. Fox*, 492 U.S. 469, 484-85 (1988).   If the Court concludes that challenged statute is invalid as applied, "it is appropriate that [the Court] not consider the overbreadth issue" because it would constitute a "gratuitous wholesale attack[] upon state and federal laws.   *Id.*

Here, the Court has determined that the challenged provisions of the Ordinance are invalid as applied to Our Lady's Inn and the Archdiocesan Elementary Schools because those provisions violate Plaintiffs' First Amendment right to expressive association. Likewise, the Court has found any requirement to provide reproductive health benefits cannot be enforced against the O'Brien Plaintiffs.   Thus, there is no need to address the overbreadth arguments.   Further, Plaintiffs have failed to demonstrate that no set of circumstances exist under which the Ordinance would valid.   For example, Plaintiffs have not shown that the non-discrimination in employment provisions would be invalid as to those who hold no contrary expressive or religious beliefs.   Accordingly, the Court will not find the Ordinance facially invalid.

**Remedy**

The Court finds that the application of the Ordinance to Plaintiffs was unlawful, and thus does not reach Plaintiffs' overbreadth and vagueness challenges, nor does it reach Plaintiffs' alternative grounds for challenging the Ordinance as applied.   The Court must

now determine whether a permanent injunction barring enforcement against Plaintiffs is the appropriate remedy.

> A court must consider the following factors in determining whether to issue a permanent injunction: (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties; (3) whether the movant proves actual success on the merits; and (4) the public interest.

*Lowry ex rel. Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 762 (8th Cir. 2008) (quoting *Forest Park II v. Hadley*, 336 F.3d 724, 731 (8th Cir. 2003), and citing, among other cases, *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)).

As to the first factor, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). In the absence of a permanent injunction barring enforcement of the Ordinance, the expressive association rights of Our Lady's Inn and the Archdiocesan Elementary Schools would continue to be curtailed. As to the O'Brien Plaintiffs, the absence of a permanent injunction would cause them harm because they must either comply with the Ordinance in violation of their sincerely-held religious beliefs (and in violation of state law) or face a possible enforcement action by the City.

Second, the issuance of an injunction would cause little or no harm to the City because it has no significant interest in the enforcement of a regulation that contravenes the Constitution or Missouri law. *See Clary v. City of Cape Girardeau*, 165 F. Supp. 3d 808, 831–32 (E.D. Mo. 2016). Third, Plaintiffs have succeeded on their as applied challenge to

the Ordinance. Finally, "it is always in the public interest to protect constitutional rights," *Amos v. Higgins*, 996 F. Supp. 2d 810, 814 (W.D. Mo. 2014) (citation omitted) and ensure compliance with state law.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion for summary judgment (ECF No. 13) is **GRANTED in part and DENIED in part** as follows:

**IT IS FURTHER ORDERED** that Defendant City of St. Louis, Missouri, its agents, servants, employees, and attorneys, and any persons acting in concert with Defendant, are enjoined from enforcing the employment and housing provisions of St. Louis City Ordinance 70459 against Our Lady's Inn to the extent inconsistent with the mission of Our Lady's Inn: Section Two (A); (B)(1) (first sentence), (2) (first sentence), (5); and (C)(1)(a), (b), (c), (d), (e), (f), (g), (h).

**IT IS FURTHER ORDERED** that Defendant City of St. Louis, Missouri, its agents, servants, employees, and attorneys, and any persons acting in concert with Defendant, are enjoined from enforcing the following employment provisions of St. Louis City Ordinance 70459 against the Archdiocesan Elementary Schools of the Archdiocese of St. Louis: Section Two (A); (B)(1) (first sentence), (2) (first sentence), (5).

**IT IS FURTHER ORDERED** that Defendant City of St. Louis, Missouri, its agents, servants, employees, and attorneys, and any persons acting in concert with Defendant, are enjoined from enforcing the following provisions of the St. Louis City

Ordinance 70459 against Frank Robert O'Brien, Jr. and O'Brien Industrial Holdings, LLC, to the extent those provisions require them to provide health insurance benefits covering abortions, contraception, and sterilization to its employees: Section Two (A); (B)(1) (first sentence), (2) (first sentence), (5).

      **IT IS FURTHER ORDERED** that the City of St. Louis' cross-motion for summary judgment is **GRANTED in part and DENIED in part**, in accordance with this Opinion.   ECF No. 20.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of September, 2018.